IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
Case No.:0:24-cv-61996-XXXX

| | |
|---|---|
| **KELLER NORTH AMERICA, INC.,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| **ANDRES BAQUERIZO,** | ) ) |
| Serve: | ) ) |
| 3905 W. Gardenia Avenue<br>Weston, Florida 33332 | ) ) ) ) ) |
| Defendant. | ) |

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Keller North America, Inc. ("Keller"), by and through counsel, for its Verified Complaint for Injunctive Relief and Damages against Defendant Andres Baquerizo ("Baquerizo"), states and alleges as follows:

**NATURE OF THIS ACTION**

1.  Keller is a geotechnical specialist contractor that works with its clients to address their geotechnical challenges across the United States and worldwide. To that end, Keller maintains a team of highly trained engineers, project managers, and business developers who have a wealth of experience and provide a wide range of geotechnical techniques and optimum solutions to clients.

1

2.      Baquerizo was formerly employed by Keller and worked for the company for over seventeen years, holding integral leadership positions with the company, including most recently as a Vice President based out of Miami, Florida.

3.      As a result of his high-level role with Keller, Baquerizo had access to Keller's confidential and proprietary information relating to Keller's business plans, strategies, operations, productivity, customers, and financial performance and projections, and he was positioned to divert other members of Keller's workforce, along with Keller's intellectual property and business relationships, away from the company.

4.      On September 25, 2024, Baquerizo unexpectedly resigned from Keller, and despite being bound by a contract with Keller that included non-competition, customer non-solicitation, and employee non-solicitation provisions, Baquerizo went to work for Keller's direct competitor, Berkel & Company Contractors, Inc. ("Berkel"), in the same market area doing the same or substantially similar job for Berkel as he did for Keller.

5.      Not only is Baquerizo working for a competing company in violation of his non-compete obligations, but he is also soliciting current Keller employees in an attempt to persuade them to leave their employment with Keller to work for Berkel, as well as soliciting Keller customers.

6.      Baquerizo also took Keller's confidential and proprietary information and/or trade secrets prior to his departure from Keller and, upon information and belief, has used or is using such information to benefit himself and his new employer, Berkel.

7.      Consequently, Keller brings this action for breach of contract, for violations of the Defend Trade Secrets Act and the Florida Uniform Trade Secrets Act, and to enjoin Baquerizo's continued unlawful activity.

## PARTIES, JURISDICTION, AND VENUE

8. Keller is a corporation organized under the laws of the state of Delaware, with its principal place of business located at 7550 Teague Road, Suite 300, Hanover, Maryland 21076, and is therefore a citizen of the states of Delaware and Maryland.

9. Baquerizo is an individual residing and domiciled at 3905 W. Gardenia Ave., Weston, Florida 33332, and is therefore a citizen of the state of Florida.

10. This Court has personal jurisdiction over Baquerizo because Baquerizo resides within this District, is employed in this District, and because he engaged in the unlawful conduct alleged herein in this District.

11. The Court has subject matter jurisdiction over Keller's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over Keller's state law causes of action under 28 U.S.C. § 1367.

12. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to Keller's causes of action occurred in substantial part in this District.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

### KELLER'S BUSINESS OPERATIONS

14. Keller is a geotechnical specialist contractor that provides solutions to geotechnical challenges throughout the construction industry, including across commercial, institutional, mining, infrastructure, and other markets.

15. Among other areas, Keller operates in the deep foundation construction, earth retention, and ground improvement spaces providing its design-build services, products, and solutions to customers across the country and worldwide.

16. Keller's deep foundation services, which are required whenever weak soils have little capacity to resist an existing load or a change in an existing load and involve the construction of structural elements to transfer loads down to stronger underlying soils or rock, include (among other techniques) auger cast piles, bored piles/drilled shafts, driven cast in-situ piles, driven precast piles, screw piles, macropiles, and micropiles.

17. Keller's earth retention services, which are used to retain earth successfully so that it does not move or shift to any unwanted directions, include (among other techniques) anchors, contiguous pile walls, micropile slide stabilization systems, secant pile walls, and sheet piles.

18. Keller also provides ground improvement services, which can increase the load bearing capacity of the ground, reduce settlement, and improve the engineering properties of existing soils through, among other techniques, rigid inclusions, compaction grouting, pressure grouting, and deep soil mixing.

19. Among other locations, Keller has operations in Florida.

20. Keller has expended significant time, effort, and money to develop its relationships with its customers, to learn their particular business needs, specifications, and requirements; to develop substantial contacts and goodwill with its customers; and to market and sell its products and services to those customers.

21. In addition, to stay competitive, Keller has made a substantial investment in time, effort, and money to develop its confidential and proprietary information, including the names and

4

key contact information of its customers, pricing and usage information, business plans, sales and statistical data, product plans, employee information, and the like.

22. Any misuse of this information would place Keller at a significant competitive disadvantage in the market, in among other places, Florida.

23. Accordingly, Keller has gone to great lengths to maintain the secrecy of its confidential and proprietary information, including but not limited to: (1) restricting access to such information only to certain employees; (2) requiring employees to enter into restrictive covenant agreements; (3) maintaining robust security policies and protocols; and (4) requiring employees to return all information and equipment to Keller upon termination of their employment.

**BAQUERIZO'S EMPLOYMENT WITH KELLER**

24. Andres Baquerizo was hired by HJ Foundation in or around September 2002 as an Engineering Director and Project Manager.

25. In or around September 2007, Keller acquired HJ Foundation. HJ Foundation continued to operate as HJ Foundation until January 2020, when it merged with all other Keller companies under the Keller name.

26. On or about September 21, 2007, as a term and condition of his employment with Keller during its acquisition of HJ Foundation, Baquerizo entered into an Agreement with Keller (the "Baquerizo Agreement"). A true and accurate copy of the Baquerizo Agreement is attached hereto and incorporated herein as **Exhibit 1**.

27. The Baquerizo Agreement contains a non-competition covenant, providing, in relevant part, that:

> . . . for a period of two years after the termination or separation of Employee's employment with the Company for any reason, Employee agrees that he will not individually or jointly, directly or indirectly. . . . compete with the Company by engaging in the

5

> construction of deep foundations, including but not limited to augered piling, excavation shoring and vibro compaction or replacement, in the State of Florida.

Ex. 1, Baquerizo Agreement ¶5.

28. The Baquerizo Agreement contains an employee non-solicitation covenant, which provides:

> Employee agrees that during his employment with the Company and for a period of two years after the termination of Employee's employment with the Company for any reason, Employee will not, directly or indirectly, himself or through any individual entity: (1) solicit, hire, retain, engage, induce, or attempt to induce away, or aid, assist or abet any person or entity in soliciting, hiring, retaining, engaging, inducing, or attempting to induce away from his/her employment or association with the Company any then current officer, director, employee, independent contractor, consultant, agent, or other personnel or representative of the Company, or (ii) otherwise disrupt, impair, damage or interfere with any relationship between the Company and any of its current or former officers, directors, employees, independent contractors, consultants, agents, or other personnel or representatives.

Ex. 1, Baquerizo Agreement ¶6.

29. The Baquerizo Agreement contains a customer/client non-solicitation covenant, which provides:

> During Employee's employment with the Company and for a period of two years following the termination or separation of Employee's employment with the Company for any reason, Employee agrees not to, either individually or jointly, directly or indirectly, either as an employee, employer, operator, agent, independent contractor, owner, consultant, partner, investor or otherwise, call upon, solicit or provide to any actual or identifiable prospective client or customer of the Company any products or services that compete with the products or services offered by the Company.

Ex. 1, Baquerizo Agreement ¶7.

30. The Baquerizo Agreement contains a confidentiality provision, which provides, in relevant part, as follows:

a. Employee acknowledges that the Company's Confidential Business Information is, and has been, the subject of efforts taken by the Company that are reasonable under the circumstances to maintain confidentiality. Employee agrees to take all steps necessary, and all steps requested by the Company, to ensure that Confidential Business Information is kept secret and confidential and for the sole use and benefit of the Company and to comply with all applicable policies and procedures of the Company regarding the storage and security of all Confidential Business Information. . . .

b. Employee acknowledges that the Company's Confidential Business Information is a special and unique asset of the Company and derives independent economic value, actual or potential, from not being generally known by the public or by other persons or entities that can obtain economic value from its disclosure. Employee further agrees that the disclosure of any Confidential Business Information to competitors of the Company, both during and after his employment with the Company, or use of any Confidential Business Information for Employee's own benefit, would constitute misappropriation of the Confidential Business Information.

c. Employee covenants and agrees that he will not use any of the Company's Confidential Business Information for any purpose other than in the course and scope of his employment with the Company and for the exclusive benefit of the Company. Except for disclosure in the course and scope of his employment with the Company and on behalf of the Company, Employee will never at any time, either during or after his employment with the Company, directly or indirectly use, publish, disseminate, distribute or otherwise disclose any Confidential Business Information to any other person, firm, corporation, partnership, association or other entity.

Ex. 1, Baquerizo Agreement ¶3.

31. In the Agreement, Baquerizo expressly acknowledged that Keller regularly conducts business in the state of Florida and that "the covenants set forth in this Agreement are reasonable and necessary to protect the Company's legitimate business interests, including without limitation, the Company's valuable and confidential business information, the Company's trade secrets, the Company's proprietary information, the Company's customer relationships, the

7

Company's substantial relationships with identifiable prospective customers, and the Company's goodwill." Ex. 1, Baquerizo Agreement ¶8.

32. Baquerizo further agreed "that the two year duration of these covenants is reasonable and that the enforcement of the covenants, whether by injunctive relief, damages, or otherwise, is in no way contrary to the public health, safety, and welfare." Ex. 1, Baquerizo Agreement ¶8.

33. The Baquerizo Agreement contains a remedies provision in which Baquerizo agreed:

> …the covenants and undertaking contained in this Agreement relate to matters that are of a special, unique and extraordinary character and that a violation or breach by Employee of any of the covenants and undertakings contained in this Agreement will cause irreparable harm or damage to the Company, the monetary amount of which would be difficult, if not impossible, to ascertain and which cannot be adequately compensated.  As a result, in addition to any other available remedies, the Company shall have the right to seek and obtain specific performance, an injunction, restraining order, or other equitable relief from a court of competent jurisdiction to enforce this Agreement in the event of an actual, potential, or threatened violation or breach of any provision of this Agreement.

Ex. 1, Baquerizo Agreement ¶10.b.

34. The Baquerizo Agreement also contains an attorney's fee provision providing, in relevant part, that "in any action to enforce any provisions or covenants contained within the Agreement, the prevailing party shall be entitled to recover its attorney's fees and costs. . . ." Ex. 1, Baquerizo Agreement ¶16.

35. Baquerizo was promoted into progressively higher positions with Keller, ultimately being named as Vice President based out of Miami, Florida.

36. During his employment with Keller, Baquerizo had responsibility for, among other things, leading the branch team in accordance with the business strategies and plans; identifying

8

new opportunities, markets, clients and technologies while building client relationships; evaluating opportunities to maximize profitability; estimating; engineering; technical writing; negotiating contracts; conducting site visits and interfacing directly with clients; developing plans and strategies with project teams; improving productivity; monitoring and approving weekly and monthly project and branch financial reports, forecasts, budgets, and other metrics; and building and leading project-based teams.

37. While employed by Keller, Baquerizo was introduced to Keller's clients and key client contacts.

38. Baquerizo benefitted directly from the goodwill, reputation, and name recognition generated by Keller's efforts over the years to develop its business.

**COMPETING COMPANY BERKEL'S BUSINESS OPERATIONS**

39. Berkel is a specialty geotechnical contractor in the deep foundation construction, earth retention, and ground improvement arenas that provides geotechnical construction and specialized foundation and construction services to its clients across the country and in the Caribbean.

40. The company touts itself as being "one of the largest piling contractors in the U.S." and as "the most experienced designer and installer of single-pass, cast-in-place foundation systems in the U.S."

41. According to Berkel's website, the company provides deep foundation work, including auger pressure grouted piles, infinity group piles, drilled displacement/screw piles, limited/remote access, micropiles, energy piles, drilled shafts, driven piles, and rock anchors/tie-downs.

42. According to Berkel's website, Berkel also provides sheeting and shoring, including sheet piles, soldier piles, tie-backs, underpinning, bracing, secant and tangent walls, soil nails, and façade retention, as well as ground improvement work, such as rigid inclusions, compaction grouting, pressure grouting, and deep soil mixing.

43. Berkel provides services relating to the construction of deep foundations, including but not limited to augered piling, excavation shoring, and vibro compaction or replacement.

44. Berkel's engineering group, which includes structural and geotechnical engineers, offers design assistance, as well as full designs on the company's products and services.

45. Berkel operates and/or maintains projects in many locations, including in Florida.

46. Berkel provides services equivalent or similar to those that Keller provides and is a direct competitor of Keller.

**BAQUERIZO'S RESIGNATION AND POST-RESIGNATION ACTIVITIES**

47. On or about September 25, 2024, Baquerizo resigned his position with Keller to accept a position as a Vice President with Berkel.

48. According to his LinkedIn profile, Baquerizo is employed by, performs work for or otherwise oversees work performed for Berkel in the Miami, Florida area. **Exhibit 2**, Baquerizo LinkedIn.

49. Prior to his resignation from Keller, Baquerizo downloaded and took Keller's confidential and proprietary information and trade secrets, including, among other things, customer information.

50. On October 9, 2024, after learning that Baquerizo accepted a position with Berkel, Keller sent Baquerizo a cease-and-desist letter reminding him of his post-employment contractual obligations to Keller and advising that he was in direct violation of those obligations through his

employment with Berkel. A true and accurate copy of the October 9 cease-and-desist letter is attached hereto and incorporated herein as **Exhibit 3**.

51. The letter also informed Baquerizo that if he continued to violate his obligations to Keller under the Baquerizo Agreement, Keller would seek legal recourse to protect Keller's interests. *See* Ex. 3.

52. Baquerizo has not contacted Keller or otherwise responded to the October 9 letter.

53. Baquerizo continues to be employed by Berkel in direct violation of the non-competition covenant in his Agreement.

54. Upon information and belief, since leaving Keller to join Berkel, Baquerizo has called upon, solicited, or provided Keller clients or customers, or prospective clients or customers, with products or services that compete with the products or services offered by Keller, including customers and prospective customers with whom he dealt or whose identity he learned while employed by Keller.

55. Upon information and belief, Baquerizo has solicited, hired, retained, engaged, induced, or attempted to induce away, or aided, assisted, or abetted Berkel in soliciting, hiring, retaining, engaging, inducing, or attempting to induce away Keller employees from their employment or association with Keller.

56. Upon information and belief, Baquerizo is using and/or disclosing Keller's confidential and proprietary information to unfairly assist Berkel in developing and growing its market presence in direct competition with Keller.

## COUNT I
### Breach of Contract

57. Keller repeats and incorporates by reference each of the allegations set forth in the prior paragraphs as if fully set forth herein.

58. The Agreement is a valid and enforceable contract.

59. Baquerizo received adequate consideration for the Agreement and the restrictive covenants contained therein, including a promotion, his continued employment with Keller, the provision of Confidential Information to him, and the Company's investment of time, effort, and money in building relationships with customers, referral sources, and suppliers.

60. Keller has fully performed its obligations under the Agreement.

61. By accepting employment with and working for Berkel in the state of Florida less than one year after his employment with Keller ended, Baquerizo has breached the Agreement.

62. By soliciting and/or recruiting current Keller employees to leave their employment with Keller and defect to Berkel, or otherwise disrupting, impairing, damaging, or interfering with any relationship between the Company and its employees, Baquerizo has breached the Agreement.

63. By calling upon, soliciting, or providing Keller clients or customers, or prospective clients or customers, products or services that compete with the products or services offered by Keller, Baquerizo has breached the Agreement.

64. By misappropriating, using, and/or disclosing Keller's confidential and proprietary information to his own benefit or to unfairly assist Berkel in direct competition with Keller, Baquerizo has breached the Agreement.

65. As a direct and proximate result of Baquerizo's actions in breach of the Agreement, Keller has and will sustain damages.

66. Although the full extent of Baquerizo's actions and the damages caused thereby are presently unknown and irreparable, Baquerizo's breach of the Agreement has caused and will continue to cause damages to Keller, including without limitation: loss of employees, jeopardy to and/or loss of Keller's existing and future business relationships and contacts with its customers,

loss of customer confidence, loss of goodwill, loss of confidential business information, loss of referral sources, damage to or loss of Keller's reputation, and loss of competitive advantage, all of which exceeds the monetary value of $75,000, exclusive of interest and costs.

67. Keller is therefore entitled to a judgment against Baquerizo awarding damages in an amount to be determined at trial; granting a temporary restraining order, preliminary injunction, and permanent injunction prohibiting Baquerizo from competing against Keller in violation of his Agreement for a period of one year from the date on which injunctive relief is first entered; and awarding such further relief as the Court deems just and proper.

**COUNT II**
**Violation of the Defend Trade Secrets Act (18 U.S.C. § 1831 *et seq.*)**

68. Keller repeats and incorporates by reference each of the allegations set forth in paragraphs 1 through 56 as if fully set forth herein.

69. The files and data downloaded by Baquerizo prior to his departure from Keller are trade secrets of Keller subject to protection under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq.*

70. The information contained in these files and data is valuable because it is not generally known or readily accessible, through proper means, to others who can profit from its use. Keller has spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which would be of great value to any competitor.

71. The information contained in these files and data is related to products or services used in, or intended for use in, interstate commerce.

72. Keller takes and, at all times relevant hereto, has taken reasonable measures to maintain the confidential and secret nature of this information.

73. Baquerizo acknowledged his obligation to maintain the confidentiality of the information in the Baquerizo Agreement. *See* Ex. 1.

74. Baquerizo obtained the information contained in these files and data by improper means in violation of his contractual and other obligations to Keller.

75. Baquerizo's foregoing conduct constitutes an actual and threatened misappropriation and misuse of Keller's trade secret information in violation of the DTSA.

76. Upon information and belief, and as Keller expects to establish on further investigation and discovery, Baquerizo improperly retained, used, and/or disclosed (and continues to retain, use, and/or disclose) to Berkel the confidential business information and customer information contained in the downloaded files and data he took from Keller without authorization to do so.

77. Baquerizo engaged in this conduct despite acquiring this information under circumstances giving rise to a duty to maintain the information's secrecy and limit its use, which duty Baquerizo owed and continue to owe Keller as a former employee of Keller.

78. As a direct and proximate result of Baquerizo's actual and threatened misappropriation of Keller's trade secrets, Keller has suffered irreparable harm and will continue to suffer irreparable harm that cannot be adequately remedied at law unless Baquerizo is enjoined from engaging in any further acts of misappropriation and from continued possession in any form of trade secret information belonging to Keller.

79. As a direct and proximate result of Baquerizo's misappropriation, Keller has suffered and continues to suffer damages and irreparable harm, and is entitled to all damages, attorneys' fees, costs and remedies permitted under the DTSA.

80. Each of the acts of misappropriation was done maliciously by Baquerizo, thereby entitling Keller to exemplary damages to be proved at trial.

## COUNT III
### Violation of the Florida Uniform Trade Secrets Act (Fla. Stat. § 688.001, *et seq.*)

81. Keller repeats and incorporates by reference each of the allegations set forth in prior paragraphs 1 through 56 as if fully set forth herein.

82. The files and data downloaded by Baquerizo prior to his departure from Keller are trade secrets of Keller subject to protection under the Florida Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. § 688.001, *et seq.*

83. The information contained in these files and data constitutes trade secrets in that it: (a) possesses independent economic value, (b) derives value from not being generally known to others who can obtain economic value from its disclosure, (c) is not readily ascertainable by proper means by those who can obtain value from it, and (d) is the subject of Keller's efforts that are reasonable under the circumstances to maintain its secrecy.

84. Baquerizo obtained the information contained in these files and data by improper means in violation of his contractual and other obligations to Keller.

85. Baquerizo's foregoing conduct constitutes an actual and threatened misappropriation and misuse of Keller's trade secret information in violation of the FUTSA.

86. Upon information and belief, and as Keller expects to establish on further investigation and discovery, Baquerizo improperly retained, used, and/or disclosed (and continues to retain, use, and/or disclose) to Berkel the confidential business information and customer specific project information contained in the downloaded files and data he took from Keller without authorization to do so.

87. Baquerizo engaged in this conduct despite acquiring this information under circumstances giving rise to a duty to maintain the information's secrecy and limit its use, which duty Baquerizo owed and continue to owe Keller as a former employee of Keller.

88. Under the FUTSA, actual or threatened misappropriations may be enjoined.

89. As a direct and proximate result of Baquerizo's actual and threatened misappropriation of Keller's trade secrets, Keller has suffered irreparable harm and will continue to suffer irreparable harm that cannot be adequately remedied at law unless Baquerizo is enjoined from engaging in any further acts of misappropriation and from continued possession in any form of trade secret information belonging to Keller.

90. As a direct and proximate result of Baquerizo's misappropriation, Keller has suffered and continues to suffer damages and irreparable harm, and is entitled to all damages, attorneys' fees, costs and remedies permitted under the FUTSA.

91. Each of the acts of misappropriation was done maliciously by Baquerizo, thereby entitling Keller to exemplary damages to be proved at trial.

**REQUEST FOR RELIEF**

WHEREFORE, Keller demands and prays for relief against Andres Baquerizo as follows:

(a) temporary, preliminary, and permanent injunctive relief providing:

    (i) for a period of two years following the date injunctive relief is first granted, Defendant shall be enjoined from working for Berkel in violation of his Agreement;

    (ii) for a period of two years following the date injunctive relief is first granted, Defendant shall be prohibited from calling upon, soliciting, or providing any products or services that compete with the products or services offered by Keller to any of the current or identifiable prospective clients or customers of Keller;

    (iii) for a period of two years following the date injunctive relief is first granted, Defendant shall be prohibited from soliciting, hiring, retaining, engaging,

        inducing, or attempting to induce away, or aiding, assisting or abetting any person or entity in soliciting, hiring, retaining, engaging, inducing, or attempting to induce away from their employment or association with the Company any then current officer, director, employee, independent contractor, consultant, agent, or other personnel or representative of the Company; and

    (iv)    Defendant shall be prohibited from directly or indirectly disclosing or using confidential, proprietary, trade secret information belonging to Keller.

(b)    that Keller be relieved of any obligation to post an injunction bond;

(c)    actual, compensatory and punitive damages in an amount to be proven at trial;

(d)    an award of reasonable attorneys' fees and costs incurred in this action;

(e)    pre- and post-judgment interest at the maximum rate permitted by law; and

(f)    such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Dated: October 24, 2024.

                Respectfully submitted,

                */s/ Lindsay M. Massillon*
                Lindsay M. Massillon
                Florida Bar No. 92098
                lmassillon@fisherphillips.com
                **FISHER & PHILLIPS, LLP**
                201 E. Las Olas Blvd., Suite 1700
                Fort Lauderdale, Florida 33301
                Telephone: 954-525-4800
                Facsimile: 954-525-8739

                Benton N. Wood, B.C.S.
                Florida Bar No. 957275
                bwood@fisherphillips.com
                **FISHER & PHILLIPS, LLP**
                200 S. Orange Avenue
                Suite 1100
                Orlando, FL 32801
                Telephone: (407) 541-0851

Facsimile: (407) 541-0887

Laura Bailey Brown (*pro hac admission pending*)
D. Kan. No. 78908
lkbrown@fisherphillips.com
**FISHER & PHILLIPS, LLP**
4622 Pennsylvania Avenue
Suite 910
Kansas City, Missouri 64112
Phone: (816) 842-8770
Facsimile: (816) 842-8767

ATTORNEYS FOR PLAINTIFF

## VERIFICATION

I declare and verify under penalty of perjury under the laws of the United States of America and the State of MO that the foregoing is true and correct.

Executed on: 10/23/24

By: Curtis Cook

Title: Executive Vice President